**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PATRICIA A. JAGHAMIN,**

                  **Plaintiff,**          **1:11-cv-1273**
                                             **(GLS)**

        **v.**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

                  **Defendant.**
_____

**APPEARANCES:**                **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter M. Margolius      PETER M. MARGOLIUS, ESQ.
7 Howard Street
Catskill, NY 12414

**FOR THE DEFENDANT:**
HON. RICHARD S. HARTUNIAN    TOMASINA DIGRIGOLI
United States Attorney            Special Assistant U.S. Attorney
100 South Clinton Street
Syracuse, NY 13261

Steven P. Conte
Regional Chief Counsel
Social Security Administration
Office of General Counsel, Region II
26 Federal Plaza, Room 3904
New York, NY 10278

**Gary L. Sharpe**
**Chief Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.  Introduction

Plaintiff Patricia A. Jaghamin challenges the Commissioner of Social Security's denial of her claim for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI) and seeks judicial review under 42 U.S.C. § 405(g).  (*See* Compl., Dkt. No. 1.)  After reviewing the administrative record and carefully considering Jaghamin's arguments, the court affirms the Commissioner's decision and dismisses the Complaint.

## II.  Background

On February 25, 2009, Jaghamin filed applications for DIB and SSI under the Social Security Act ("the Act"), alleging disability since September 23, 2008.  (*See* Tr.[1] at 62-63, 100-06.)  After her applications were denied, (*see id.* at 64-71), Jaghamin requested a hearing before an Administrative Law Judge (ALJ), which was held on July 23, 2010, (*see id.* at 26-61, 75).  On September 9, 2010 the ALJ issued an unfavorable decision denying the requested benefits, which became the Commissioner's final determination upon the Social Security Administration

---

[1] Page references preceded by "Tr." are to the Administrative Transcript.  (*See* Dkt. No. 9.)

Appeals Council's denial of review.  (*See id.* at 1-5, 8-25.)

Jaghamin commenced the present action by filing her Complaint on October 26, 2011 wherein she sought review of the Commissioner's determination.  (*See generally* Compl.)  The Commissioner filed an answer and a certified copy of the administrative transcript.  (*See* Dkt. Nos. 7, 9.) Each party, seeking judgment on the pleadings, filed a brief.  (*See* Dkt. Nos. 13, 17.)

### III.  Contentions

Jaghamin contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence.  (*See* Dkt. No. 13 at 3-8.)  Specifically, Jaghamin claims that the: (1) Appeals Council erred by failing to grant review or remand in light of new and material evidence; (2) residual functional capacity (RFC) determination is not supported by substantial evidence; (3) ALJ improperly evaluated the opinions of her treating physicians; and (4) ALJ failed to consider the records or opinion of her chiropractor.  (*See id.*)  The Commissioner counters that the appropriate legal standards were used by the ALJ and her decision is supported by substantial evidence.  (*See* Dkt. No. 17 at 10-23.)

### IV.  Facts

The court adopts the parties' undisputed factual recitations.  (*See* Dkt. No. 13 at 1-3; Dkt. No. 17 at 2-5.)

## V.  Standard of Review

The standard for reviewing the Commissioner's final decision under 42 U.S.C. § 405(g)[2] is well established and will not be repeated here.  For a full discussion of the standard and the five-step process by which the Commissioner evaluates whether a claimant is disabled under the Act, the court refers the parties to its previous decision in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

## VI.  Discussion

## A.  Appeals Council Review

First, Jaghamin contends that the Appeals Council erred by failing to reverse or remand based on evidence submitted to it after the ALJ's decision.  (*See* Dkt. No. 13 at 3-4.)  The Commissioner counters, and the court agrees, that the records presented to the Appeals Council provided no basis to change the ALJ's decision.  (*See* Dkt. No. 17 at 10-11.)

---

[2] 42 U.S.C. § 1383(c)(3) renders section 405(g) applicable to judicial review of SSI claims.  As review under both sections is identical, parallel citations to the Regulations governing SSI are omitted.

4

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.976(b)(1); *see Perez v. Charter*, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b). However, even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Perez*, 77 F.3d at 45 (internal quotation marks and citation omitted). Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. *Id.* at 45-46.

In this case, Jaghamin submitted additional evidence to the Appeals Council, which was noted by the Appeals Council in its denial of review. (*See* Tr. at 1-5.) The evidence submitted by Jaghamin included a letter from treating psychologist Dr. Walter Kendall and additional treatment records from Greene County Mental Health Center, as well as treatment records from Albany Medical Center, St. Peter's Cancer Care Center, and Capitol Region Urological Surgeons. (*See* Tr. at 412-25, 432-44.) The

Appeals Council determined that the additional evidence did not provide a basis for changing the ALJ's decision.  (*See id.* at 2, 4.)

In his October 2010 letter, Dr. Kendall opined that Jaghamin's "ability to perform work related activities on a sustained basis is notably impaired." (*Id.* at 414.)  In addition, the treatment records from Green County Mental Health Center contain an August 2010 treatment plan completed by Dr. Kendall who rated Jaghamin's Global Assessment of Functioning at fifty.[3] (*See id.* at 414-15.)  Presuming, without deciding, that this evidence relating to Jaghamin's mental condition was within the relevant time period,[4] the court agrees with the Commissioner that these records do not render the ALJ's findings or conclusion contrary to the weight of the evidence.  *See* 20 C.F.R. § 404.970(b).  Specifically, the ALJ had before him numerous treatment records from Green County Mental Health Center, including assessments of Jaghamin's GAF score in May, September and

---

[3] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness."  *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004).  A GAF score of between forty-one and fifty indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000).

[4] "The Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."  *See* 20 C.F.R. § 416.1470(b).

6

November 2009 as well as February and May 2010.[5]  (*See* Tr. at 276-89,

362-69.)  Indeed, the ALJ specifically noted Jaghamin's GAF scores of fifty

and explained her reasoning for according them "little weight" in making her

RFC determination.  (*Id.* at 22-23.)  As the evidence submitted to the

Appeals Council from Green County Mental Health Center was consistent

with the evidence before the ALJ from this treating source, it did not

"undermine[] the findings on which the ALJ's denial of [Jaghamin]'s claims

was based."  *See Brown v. Apfel*, 174 F.3d 59, 60 (2d Cir. 1999).

     Jaghamin further contends that a March 2010 consultation

report—first submitted to the Appeals Council—which referred to a January

2010 MRI of her cervical spine, contradicts the ALJ's finding that the small

nerve sheath lesion at the C5-C6 level was stable.  (*See* Dkt. No. 13 at 4;

Tr. at 20, 412.)  Specifically, the January 2010 MRI found "[p]erhaps [a]

slight increase in size of enhancing intradural, extramadullary mass at

C5-C6 on the left."  (Tr. at 301).  In addition to discussing the results of the

January 2010 MRI, the consultation report also notes that Jaghamin had

---

    [5] Throughout this time, Jaghamin's GAF score was assessed to be fifty, fifty-four, or fifty-five.  (*See* Tr. at 276-78, 282, 364-65.)  A GAF score of between fifty-one and sixty indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers)."  Diagnostic and Statistical Manual of Mental Disorders at 34.

symmetrical reflexes and full 5/5 motor strength in her upper extremities. (*See id.* at 413.)  Further, the report noted that Jaghamin experienced tenderness in the neck area, diminished range of motion in her neck, and diminished sensation in her upper right extremity, but was able to sit without discomfort and walk with a normal gait.  (*See id.*)  Thus, these records do not "'significantly discredit[] or undercut the ALJ's decision to deny benefits.'"  *See Knight v. Astrue*, No. 10 Civ. 5301, 2011 WL 4073603, at *13 (E.D.N.Y. Sept. 13, 2011) (quoting *Fernandez v. Apfel*, CIV. A. CV-977532DGT, 1999 WL 1129056, at *4 (E.D.N.Y. Oct. 4, 1999)).

With respect to the records from St. Peter's Cancer Care Center, which document treatment Jaghamin received from November 2010 through July 2011 for the "[s]chwannoma involving the C5-C6 region," and the records from Capitol Region Urological Surgeons, where Jaghamin was evaluated for urinary incontinence beginning in October 2010, even if the evidence could be construed to relate to the relevant period of disability, the court agrees with the Commissioner that they do not add so much to the record as to displace the substantial evidence supporting the ALJ's RFC determination.  (Tr. at 420; *see id.* at 419-25, 432-44.)  The records do not offer any retrospective opinion as to Jaghamin's condition during the

relevant period or any opinion as to Jaghamin's functional capabilities.  In addition, despite Jaghamin's contention, her treatment with a specialist after the ALJ's decision does not undermine the ALJ's finding that Jaghamin's urinary incontinence was not severe,[6] in part, because she had failed to follow through with her treating physician's repeated recommendation to see a urologist.  (*See* Dkt. No. 13 at 4; Tr. at 14.)

**B.    RFC Determination**

Next, Jaghamin attacks the ALJ's RFC determination that she is able to perform sedentary or light work with certain restrictions to account for her specific limitations.  (*See* Dkt. No. 13 at 4-5.)  According to Jaghamin, the ALJ's RFC determination "is simply conclusory and does not contain any rationale or reference to any opinions relied upon."  (*Id.* at 5.)  The court does not agree.

A claimant's RFC "is the most [she] can still do despite [her] limitations."  20 C.F.R. § 404.1545(a)(1).  In assessing a claimant's RFC, an ALJ must consider "all of the relevant medical and other evidence," including a claimant's subjective complaints of pain.  *Id.* § 404.1545(a)(3).

---

[6] A "severe impairment"  is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).

An ALJ's RFC determination must be supported by substantial evidence[7] in the record.  *See* 42 U.S.C. 405(g).  If it is, that determination is conclusive and must be affirmed upon judicial review.  *See id.*; *Perez*, 77 F.3d at 46.

Here, the ALJ's decision examined the relevant factors in reaching an RFC determination—principally relying on the opinions of state agency medical consultant R. Weiss and consultative examiner Amelita Balagtas.[8] (*See* Tr. at 21-23.)  It is readily apparent that the ALJ considered all of the record evidence, as the lengthy RFC determination— which spans seven pages—specifically discusses Jaghamin's daily activities, her pain and the medications she used to treat it, the objective medical evidence of record, and the opinion evidence from treating, examining, and non-examining sources.  (*See id.* at 17-23.)  Indeed, the record as a whole demonstrates the ALJ's RFC assessment is supported by substantial evidence and is therefore conclusive.  *See Alston v. Sullivan*, 904 F.2d 122, 126 (2nd Cir. 1990);  *Perez*, 77 F.3d at 46.

## C.   Weighing Medical Opinions

---

[7] "Substantial evidence is defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept to support a conclusion."  *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

[8] Although the ALJ failed to specify what weight she assigned to Dr. Balagtas' opinion, the ALJ explicitly considered the results of her examination and her Medical Source Statement, which support the ALJ's RFC determination.  (*See* Tr. at 21, 228-30.)

Jaghamin also alleges that the ALJ failed to comply with the treating physician rule by inadequately weighing the opinions of treating physician Walter Hubicki and Dr. Kendall.  (*See* Dkt. No. 13 at 5-7.)  The Commissioner counters, and the court agrees, that the weight afforded to these opinions by the ALJ is supported by substantial evidence.  (*See* Dkt. No. 17 at 17-20.)

Medical opinions, regardless of the source, are evaluated by considering several factors outlined in 20 C.F.R. § 404.1527(c).  Controlling weight will be given to a treating physician's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 404.1527(c)(2); *see Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). Unless controlling weight is given to a treating source's opinion, the ALJ is required to consider the following factors in determining the weight assigned to a medical opinion: whether or not the source examined the claimant; the existence, length and nature of a treatment relationship; the frequency of examination; evidentiary support offered; consistency with the record as a whole; and specialization of the examiner.  *See* 20 C.F.R. § 404.1527(c).

11

Here, Dr. Hubicki completed a Medical Source Statement form and opined that Jaghamin could lift up to twenty pounds occasionally and carry up to ten pounds occasionally.  (*See* Tr. at 331.)  Further, he reported that, in an eight-hour work day, Jaghamin could sit for three hours, for up to forty-five minutes at one time, stand for three hours, one hour at a time, and walk for two hours, one hour at a time.  (*See id.* at 332.)  In addition, Jaghamin was limited to occasionally reaching and handling with her left hand and could never feel, push, or pull with her left hand.  (*See id.* at 333.)  Finally, Jaghamin could never climb ladders or scaffolds and could never tolerate exposure to unprotected heights, moving mechanical parts, extreme cold, extreme heat, or vibrations, but could occasionally balance and tolerate exposure to operating a motor vehicle, humidity and wetness, dust, odors, fumes, and pulmonary irritants.  (*See id.* at 334-35.)  The ALJ accorded Dr. Hubicki's opinion "little weight" because it was not supported by the objective medical evidence and was based primarily on Jaghamin's subjective complaints.  (*Id.* at 21.)

Indeed, Dr. Hubicki's own treatment notes evidence a decreased range of motion in Jaghamin's neck and occasional tenderness in her left shoulder, cervical midline, and left trapezius, but they otherwise indicate no

musculoskeletal or neurological findings.  (*See id.* at 370-71, 374-75, 381-82, 385, 390, 402, 411.)

Consistent with Dr. Hubicki's treatment records, Jaghamin was examined by Dr. Balagtas in April 2009 and found to suffer a decreased range of motion in her cervical spine and left shoulder, but have 5/5 strength in her biceps and triceps bilaterally, no muscle atrophy in her upper extremities, and normal reflexes, although sensation was decreased in her left hand.  (*See* Tr. at 229.)  Jaghamin's hand and finger dexterity were intact but her grip strength was 4.5/5 on the left.  (*See id.*)  Based on this examination, Dr. Balagtas opined that Jaghamin "would have moderate limitations in activities that require lifting and overhead activities."  (*Id.* at 230.)

Thereafter, in July 2009, Jaghamin was examined at Columbia Memorial Hospital Pain Management and was found to suffer muscle waste in her left hand and a decreased range of motion in her left shoulder, however, her sensory and reflex exams were normal and she had a normal gait and stance.  (*See id.* at 271.)  A subsequent examination, in August 2009, revealed a normal gait and stance, normal reflexes, and, except for decreased grip strength in her left hand, a normal motor exam.  (*See id.* at

262.)  In December 2009, Jaghamin was examined by Dr. Louis Noce who noted that she sat comfortably, in no apparent distress and walked with a normal heel-to-toe gait.  (*See id.* at 296.)  Dr. Noce indicated that Jaghamin's reflexes were not fully intact, but her upper extremity strength, including in her biceps, triceps, and grip, was 5/5.  (*See id.*)  Finally, in March 2010, she was examined by Dr. Farag Aboelsaad and found to "sit[] with no apparent distress or discomfort [and w]alk[] with [a] normal gait." (*Id.* at 413.)  Dr. Aboelsaad also noted that Jaghamin's motor strength was 5/5 and the deep tendon reflexes in her upper extremities were symmetrical, although sensation was diminished in her upper right extremity and her neck exam revealed tenderness and a decreased "left side range of motion."  (*Id.*)

In addition to these treatment notes and the opinion of Dr. Balagtas, an EMG study conducted in December 2009 revealed "a mild, chronic radiculopathy at C6 or C7 on the left along with mild carpal tunnel syndrome."  (*Id.* at 299.)  MRIs of Jaghamin's cervical spine and brain showed a small nerve sheath lesion at the C5-C6 level and some osteophyte formation at the C5-C6 level "producing impingement on the left ventral aspect of the thecal sac," (*id.* at 301; *see id.* at 290), but there were

14

no definitive findings for localized nerve root impingement, central canal stenosis, or other significant abnormalities, (*see id.* at 301-02).

In sum, the ALJ provided sufficient reasons for discounting Dr. Hubicki's opinion, and her decision to do so is supported by substantial evidence.

Turning to the opinion of Dr. Kendall, the ALJ accorded "little weight" to the GAF scores of fifty that Dr. Kendall assigned to Jaghamin, explaining that "the objective medical evidence does not support more than moderate limitations in any area of functioning." (*Id.* at 23.)  Jaghamin argues that her testimony with respect to the frequency and intensity of her anxiety and panic attacks—which she testified she suffered seven to eleven times per day—support Dr. Kendall's assessment, and, further, the ALJ erred in discounting such testimony as the record reflects that she made similar complaints to her treating and examining medical sources.  (*See* Dkt. No. 13 at 6-7.)

Jaghamin was initially assessed by Green County Mental Health Center in May 2009 and complained of suffering from depression and four-to-six panic attacks a day.  (*See* Tr. at 279-82.)  At this time, Jaghamin was reported to be non-psychotic and non-suicidal, with average intelligence,

fairly good insight and judgment, and intact impulse control and memory functions.  (*See id.* at 281.)  Further, her thought process was clear and logical, quality of speech was normal and coherent, and she was able to care for her basic activities of daily living.  (*See id.* at 280-81.)  In June 2009, Jaghamin reported to Dr. Hubicki that her panic attacks had decreased in frequency to three or four times a day.  (*See id.* at 401.)  Jaghamin thereafter reported an increase in her panic attacks in December 2009, but, in April 2010, she reported experiencing fewer anxiety and panic symptoms since she began a new medication, as well as improved sleep.  (*See id.* at 366.)

In addition, in April 2009, Jaghamin was evaluated by consultative examiner Kerry Brand who noted that Jaghamin was cooperative with an adequate manner of relating, social skills, and overall presentation, although her mood was depressed and anxious.  (*See id.* at 231-36.)  Jaghamin's attention and concentration and recent and remote memory skills were found to be intact, intellectual functioning was estimated to be in the average range, and insight and judgment were good.  (*See id.* at 234.)  Further, she was appropriately dressed with good personal hygiene, her speech was intelligible and clear, and thought processes were coherent

and goal directed. (*See id.* at 233.) Based on this examination, Dr. Brand opined that Jaghamin retained the ability to follow and understand simple directions and instructions, perform simple and complex tasks with supervision, and learn new tasks. (*See id.* at 234.) However, according to Dr. Brand, Jaghamin may have moderate difficulty maintaining attention and concentration and maintaining a regular schedule and moderate to severe difficulty making appropriate decisions, relating with others, and dealing with stress. (*See id.*) In June 2009, Dr. Weiss reviewed the evidence of record, including Jaghamin's reported activities of daily living and Dr. Brand's evaluation, and concluded that Jaghamin maintained the RFC "to carry out work procedures with a consistent pace, understand and remember simple instructions, interact and relate adequately with co-workers and supervisors, adapt to changes, and handle stress in the workplace." (*Id.* at 259.) He further concluded that "the opinion of [Dr. Brand] that [Jaghamin] is markedly impaired in the ability to function is not supported." (*Id.*)

Ultimately, the ALJ's decision to discount Dr. Kendall's opinion that Jaghamin suffered "[s]erious symptoms" or a "serious impairment in social, occupational, or school functioning" is supported by substantial evidence in

the record.  Diagnostic and Statistical Manual of Mental Disorders 34 (4th

ed., Text Rev. 2000); (*see id.* at 22-23).

**D.      Weighing Opinion Evidence from "Other Sources"**

Lastly, Jaghamin asserts that the ALJ failed to "reference, discuss or

consider" the records or opinion of her chiropractor, Thomas Tini.  (Dkt. No.

13 at 7-8.)  The Commissioner argues that, because Tini is not an

acceptable medical source and his opinion was on an issue reserved to the

Commissioner, the ALJ did not err.  (*See* Dkt. No. 17 at 20-21.)  The court

again agrees with the Commissioner.

Overall, "the ultimate finding of whether a claimant is disabled and

cannot work . . . [is] reserved to the Commissioner."  *Snell v. Apfel*, 177

F.3d 128, 133 (2d Cir. 1999) (internal quotation marks and citation omitted).

"That means that the Social Security Administration considers the data that

physicians provide but draws its own conclusions as to whether those data

indicate disability."  *Id.*  Thus, opinions from treating sources on issues

reserved to the Commissioner, *i.e.*, dispositive issues, are not given "any

special significance."  20 C.F.R. § 404.1527(d)(3).  Moreover, chiropractors

are not "acceptable medical sources" and, therefore, their treatment

records "cannot establish the existence of a medically determinable

impairment," but can only "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 71 Fed. Reg. 45,593, 45,594 (Aug. 9, 2006); *see* 20 C.F.R. § 404.1513(a), (d)(1); *O'Connor v. Chater*, 164 F.3d 618, 1998 WL 695418, at *1 (2nd Cir. Sept. 25, 1998).

Here, in April 2009, Tini submitted a "narrative report" to the New York State Office of Temporary and Disability Assistance and opined that Jaghamin "has suffered a permanent, partial disability."  (Tr. at 215-19.) Notably, this opinion offers no assessment of Jaghamin's functional capabilities and is, instead, on an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d).  Accordingly, it is evident that the opinion would not have changed the outcome of the ALJ's decision and her failure to explicitly discuss the report therefore constitutes harmless error.  *See Walzer v. Chater*, No. 93 Civ. 6240, 1995 WL 791963, at *9 (S.D.N.Y. Sept. 26, 1995) (explaining that, where discussion of an omitted medical report "would not have changed the outcome of the ALJ's decision," such omission constitutes "harmless error"); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (indicating that, while the ALJ is obligated to fully develop the record, she is not required to discuss all of the evidence

19

submitted and a failure to do so does not indicate that the evidence was not considered).

**E.** **Remaining Findings and Conclusions**

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Jaghamin's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 28, 2013
Albany, New York

Gary L. Sharpe
Gary L. Sharpe
Chief Judge
U.S. District Court

20